**08 C 1246**

**JUDGE LINDBERG**
**MAGISTRATE JUDGE VALDEZ**

# AREA WIDE PIT/QUARRY MATERIAL HAULERS AGREEMENT

By and Between the

## CHICAGOLAND DUMP TRUCK HAULERS ASSOCIATION

and

## TEAMSTER LOCALS 142, 179, 301, 325 330, 673, 705, 710, 731 AND 786



All affiliated with the

*International Brotherhood of Teamsters*

and

*Teamsters Joint Council No. 25*

effective

*May 1, 2001 through April 30, 2004*



EXHIBIT
1

**TEAMSTERS LOCAL UNION NO. 142**
Phone: (219) 949-1550 / Fax: (219) 944-6278
1300 Clark Rd.
Gary, IN 46404

**TEAMSTERS LOCAL UNION NO. 179**
Phone: (815) 741-2200 / Fax: (815) 741-2278
1000 N.E. I-55 Frontage Rd.
Joliet, IL 60431

**TEAMSTERS LOCAL UNION NO. 301**
Phone: (847) 623-5430 / Fax: (847) 623-5795
36990 N. Greenbay Rd.
Waukegan, IL 60087

**TEAMSTERS LOCAL UNION NO. 325**
Phone: (815) 874-6307 / Fax: (815) 874-4694
5533 11TH ST.
Rockford, IL 61109

**TEAMSTERS LOCAL UNION NO. 330**
Phone: (847) 695-1516 / Fax: (847) 695-1579
2400 Big Timber Rd., Bldg. B, Ste. 201
Elgin, IL 60123

**TEAMSTERS LOCAL UNION NO. 673**
Phone: (630) 231-6660 / Fax: (630) 231-6168
1050 W. Roosevelt Rd.
West Chicago, IL 60185

**TEAMSTERS LOCAL UNION NO. 705**
Phone: (312) 738-2800 / Fax: (312) 738-1196
1645 W. Jackson Blvd.
Chicago, IL 60612

**TEAMSTERS LOCAL UNION NO. 710**
Phone: (773) 254-3200 / Fax: (773) 254-4193
4217 S. Halsted St.
Chicago, Il 60609

**TEAMSTERS LOCAL UNION NO. 731**
Phone: (708) 482-7400 / Fax: (708) 482-7407
1100 E. 31st St.
La Grange Park, IL 60526

**TEAMSTERS LOCAL UNION NO. 786**
Phone: (312) 666-2750 / Fax: (312) 666-7943
300 S. Ashland Ave. Ste. 501
Chicago, IL 60607

## TABLE OF CONTENTS

| | Article No. | Page No. |
|---|---|---|
| DEFINITIONS | | 4 |
| RECOGNITION AND SCOPE OF WORK | 1 | 5 |
| RECOGNITION | 2 | 5 |
| PURPOSE OF THIS AGREEMENT | 3 | 5 |
| SEPARABILITY AND SAVINGS PROVISIONS | 4 | 5 |
| UNION SECURITY | 5 | 5 |
| CHECK-OFF | 6 | 6 |
| HIRING | 7 | 7 |
| WAGES | 8 | 7 |
| WORKING HOURS AND OVERTIME | 9 | 7 |
| HOLIDAYS | 10 | 13 |
| VACATIONS | 11 | 14 |
| GENERAL CONDITIONS | 12 | 15 |
| LEAVE OF ABSENCE | 13 | 16 |
| PROTECTION OF RIGHTS | 14 | 18 |
| SALE AND TRANSFER | 15 | 18 |
| HEALTH AND WELFARE AND PENSION/SEVERANCE TRUST FUND | 16 | 19 |
| WORK PRESERVATION AND PROTECTION OF STANDARDS | 17 | 19 |
| GRIEVANCES AND ARBITRATION | 18 | 27 |
| ECONOMIC LOSS | 19 | 29 |
| NO STRIKES OR LOCKOUTS | 20 | 30 |
| INSPECTION PRIVILEGES | 21 | 30 |
| JOB ACCESS AND UNION STEWARDS | 22 | 31 |
| CONDITIONS OF EMPLOYMENT | 23 | 31 |
| OWNER/DRIVERS | 24 | 32 |
| NON-DISCRIMINATION | 25 | 32 |
| EQUAL EMPLOYMENT OPPORTUNITY | 26 | 33 |
| EQUIPMENT | 27 | 33 |
| COMPLIANCE WITH SAFETY AND TRAFFIC LAWS | 28 | 33 |
| JURY DUTY PAY | 29 | 34 |
| MECHANIC'S TOOLS | 30 | 34 |
| BEREAVEMENT PAY | 31 | 34 |
| ON THE JOB INQUIRY | 32 | 34 |
| MANAGEMENT RIGHTS | 33 | 35 |
| TECHNOLOGICAL CHANGE | 34 | 35 |
| DRUG AND ALCOHOL TESTING PHYSICAL EXAMINATIONS | 35 | 35 |
| BULLETIN BOARD ACCESS | 36 | 36 |
| PRE-JOB CONFERENCE | 37 | 36 |
| JURISDICTIONAL DISPUTES | 38 | 36 |
| LABOR WORK | 39 | 37 |
| EMPLOYMENT TERMINATION | 40 | 37 |
| SEPARATE AGREEMENTS | 41 | 37 |
| LABOR/MANAGEMENT COOPERATION COMMITTEE | 42 | 37 |
| FEDERAL AND STATE REGULATIONS | 43 | 38 |
| DURATION AND TERMINATION | 44 | 38 |
| | 45 | 38 |

## *ARTICLES OF AGREEMENT*

THIS AGREEMENT entered into this _____ day of _____, 2001 by and between Chicagoland Dump Truck Haulers Association (hereinafter referred to as the Employer as defined in Article 1.1 below) who employ persons within the bargaining unit covered by this Agreement, and Teamster Local Union No.'s 142, 179, 301, 325, 330, 673, 705, 710, 731 and 786 all affiliated with the International Brotherhood of Teamsters (hereinafter referred to as the Union as defined in Article 1.2 below). This Agreement shall be known as the Area Wide Pit/Quarry Material Haulers Agreement.

## *WITNESSETH*

1. The purpose of this Agreement is (a) to enter into a definite labor-management contract covering the wages, hours, conditions of work and terms of employment in the relationship between Employer and Employee; (b) to prevent strikes, lockouts, and work stoppages; (c) to adopt suitable measures for the peaceful settlement of grievances and differences; (d) to secure to members of the Association or other Employers sufficient capable Employees; (e) to protect the economic and employment welfare of Employees.

2. It is mutually understood and agreed that the following terms relating to the wages, hours and working conditions of Employees covered by this Agreement have been decided upon by means of collective bargaining,  and that the following provisions will be binding upon the parties to this Agreement during the terms of this Agreement and any renewal period thereof.

## *ARTICLE 1 – DEFINITIONS*

1.1 Whenever the word "EMPLOYER" is used herein, it shall mean an Employer who now is or who becomes a member of the Chicagoland Dump Truck Haulers Association ("ASSOCIATION").

1.2 Whenever the word "UNION" is used herein, it shall mean Teamsters Local Union No.'s 142, 179, 301, 325, 330, 673, 705, 710, 731 and 786.

1.3 Whenever the word "Employee" or "Employees" is used herein, it shall mean the employee or employees in the classifications of work covered by this Agreement, without expanding the existing bargaining unit classifications.

1.4 This Agreement shall not apply to any classification covered by another collective bargaining agreement with another Labor Union other than the International Brotherhood of Teamsters, with respect to any Employer who is party to such other agreement.

1.5 Whenever the work "Days" or "Weeks" is used herein, it shall mean calendar days or weeks unless otherwise indicated.

## ARTICLE 2 – RECOGNITION AND SCOPE OF WORK

2.1 *Geographic Coverage.* The area covered by this Agreement shall be the geographic jurisdiction of Teamsters Local Union No.'s 142, 179, 301, 325, 330, 673, 705, 710, 731 and 786.

2.2 *Bargaining Unit.* The bargaining unit consists of all employees in the classifications of work covered by this Agreement, employed by the Employer in the geographic area.

2.3 *Scope of Work.* This Agreement shall apply to all dump-truck hauling for pit & quarry material hauls, private construction and work not covered by prevailing wages laws on prevailing wage jobs.

2.4 *Acceptable Agreement.* This Agreement's compensation rates and benefits shall be accepted by Joint Council 25 in the geographical jurisdiction of all signatory Locals.

2.5 *Free Movement of Men.* Signatories hereto shall be free to work throughout the geographical area covered by this Agreement utilizing their regular employees and Owner/Drivers.

## ARTICLE 3 - RECOGNITION

3.1 The Association and each Employer recognizes the Union as the sole and exclusive bargaining agent representative with respect to wages, hours and terms and conditions of employment for all employees covered by this Agreement. The Union recognizes the Association as the sole and exclusive bargaining agent for its members, and for such other persons, firms or corporations as may hereafter become members of the Association.

## ARTICLE 4 - PURPOSE OF THIS AGREEMENT

4.1 The purpose of this Agreement is to establish the hours, wages, and other conditions of employment and to adopt measures for the peaceful settlement of grievances and differences, and for the purpose of maintaining a cooperative relationship so that the Employers may secure sufficient capable workers and the workers have as much continuous employment as possible.

## ARTICLE 5 - SEPARABILITY AND SAVINGS PROVISIONS

5.1 It is mutually understood and agreed by the parties to this Agreement that nothing contained herein shall be intentionally in conflict with any existing Federal or State of Illinois enactments, or rules or regulations made pursuant thereto.

5.2 If any provision of this Agreement should be held invalid by operation of law or by any tribunal of competent jurisdiction, or if compliance with or enforcement of any provision should be restrained by such tribunal pending a final determination as to its validity, the remainder of this Agreement or the application of such provision to persons or circumstances other than those as to which it has been held invalid or as to which compliance with or enforcement of has been restrained, shall not be affected thereby.

5.3 In the event any provision of this Agreement thereto is held invalid or enforcement of or compliance with has been restrained, as above set forth, the Union, the Association and the Employer shall enter into immediate collective bargaining negotiations, upon the request of the Union, the Association or the Employer for the purpose of arriving at a mutually satisfactory replacement for such provision during the period of invalidity or restraint.

## *ARTICLE 6 - UNION SECURITY*

6.1 All present employees who are members of the Union on the effective date of this Agreement or on the date of execution of this Agreement, whichever is the later, shall remain members of the Union in good standing as a condition of employment. All present employees who are not members of the Union and all employees who are hired hereafter shall become and remain members in good standing of the Union as a condition of continued employment on and after the thirty first (31st) day following the beginning of their employment or on and after the thirty first (31st) day following the effective date of this Agreement or the execution date of this Agreement, whichever is the later. This provision shall be made and become effective as of such time as it may be made and become effective under the provisions of the National Labor Relations Act, but not retroactively.

6.2 For the purpose of enforcement of this Article, the Employer shall consider an employee to have membership in the Union in good standing, unless the Secretary-Treasurer of the Union notifies the Employer in writing that the employee is not a member of the Union in good standing because he has failed to tender to the Union periodic dues and initiation, re-initiation or reinstatement fees uniformly required as a condition of the Union membership. For purposes of this Agreement, membership in good standing shall mean the financial obligation requiring payment of periodic Union Dues and fees, or their equivalent.

6.3 An employee who has failed to acquire, or thereafter maintain, membership in the Union as herein provided in 6.1 above, shall be terminated seventy-two (72) hours after his Employer has received written notice from an authorized representative of the Union, certifying that membership has been, and is continuing to be, offered to such employee on the same basis as all other members and, further, that the employee has had notice and opportunity to make payment of all dues and initiation fees, re-initiation or reinstatement fees.

6.4 The Union agrees to indemnify and hold the Employer harmless against any claim, demand, suit or other form of liability which shall arise out of or by reason of action taken by the Employer for the purpose of complying with this Article.

## *ARTICLE 7 - CHECK-OFF*

7.1 The Employer shall deduct from the wages of Union members who have executed and caused to be delivered to the Employer a valid, voluntary, written assignment the regular monthly Union dues which are remitted monthly before the last business day of the affected month, initiation fees, re-initiation or reinstatement fees of the Union if due and owing, and as are necessary to keep employees as members in good standing in accordance with the Constitution and By-Laws of the Union. Such deductions shall be remitted to the Secretary-Treasurer of the Union. No deductions shall be made which are prohibited by the applicable laws. The Union shall indemnify and hold the Employer harmless against any claim, demand, suit or other form of liability that shall arise out of or by reason of action taken or not taken by the Employer for purposes of complying with this Article.

## *ARTICLE 8 - HIRING*

8.1 *Additional Employees.* When the Employer needs additional employees, it shall give the Local Union equal opportunity with all sources to provide suitable applicants, but shall not be required to hire those referred by the Union.

8.2 The Employer will notify the new employee of the requirement of Article 6 (Union Security) including as a condition of continued employment, the obligation to join the Union after thirty (30) days of employment.

8.3 Once a month on the first day of each month after a new employee is hired, the Employer shall provide the respective Local Union with a list of such new hirings indicating the employee's name, address, Social Security number, date of hiring and the location where the employee works.

## *ARTICLE 9 - WAGES*

9.1 The Employer agrees to compensate the employees, the prevailing wage rates when engaged in construction work covered by the Davis Bacon Act.

9.2 The following wage rates of hourly pay shall prevail during the period herein set forth.

## *FOR LOCALS 301 AND 330 ONLY:*

### EFFECTIVE

| CLASSIFICATIONS | AUG. 20, 2001 | | MAY 1, 2002 | | MAY 1, 2003 | |
|---|---|---|---|---|---|---|
| CHAUFFEURS | | | | | | |
| | L.U. 301 | L.U. 330 | L.U. 301 | L.U. 330 | L.U. 301 | L.U. 330 |
| THREE (3) AXLE VEHICLE | $22.08 | $22.53 | $22.88 | $23.53 | $23.68 | $24.53 |
| FIVE (5) AXLE VEHICLE | $22.18 | $22.63 | $22.98 | $23.63 | $23.78 | $24.63 |

### CLASSIFICATIONS

CHAUFFEURS

| | | |
|---|---|---|
| THREE (3) AXLE VEHICLE | $22.40 | $23.40 | $24.40 |
| FIVE (5) AXLE VEHICLE | $22.50 | $23.50 | $24.50 |

*THE FOLLOWING RATES WILL APPLY IN THOSE JURISDICTIONS WHERE THE CLASSIFICATIONS HAVE BEEN INCLUDED IN THE BARGAINING UNIT:*

### EFFECTIVE

| | AUG. 20, 2001 | | MAY 1, 2002 | | MAY 1, 2003 | |
|---|---|---|---|---|---|---|
| | L.U. 301 | L.U. 330 | L.U. 301 | L.U. 330 | L.U. 301 | L.U. 330 |
| MECHANICS * | $22.40 | $22.53 | $23.40 | $23.53 | $24.40 | $24.53 |
| MECHANICS HELPERS | $22.00 | $22.28 | $23.00 | $23.28 | $24.00 | $24.28 |
| UNSKILLED GARAGE EMPLOYEES | $22.00 | $22.28 | $23.00 | $23.28 | $24.00 | $24.28 |

*The Employer may establish a method to qualify mechanics with the consent of the Unions and the Association.

### *PRIVATE CONSTRUCTION WORK*

This shall include all dump truck driver employees who are engaged in the work of transporting building materials from one point to another on a job site, delivery of hot mix, asphalt or concrete paving material, dumping of materials into any type of spreading machine on the job site and removal of materials other than stockpiled materials.

It is understood that any work legally required to be paid at the prevailing rate shall be paid in accord with such legal requirements.

## *FOR LOCALS 301 AND 330 ONLY:*

### MINIMUM BILLABLE HOUR

### WITH INCLUSION OF HOLIDAY AND VACATION BENEFIT

### SEMI-DUMP RATES                    SIX-WHEELER RATES

### EFFECTIVE AUG. 20, 2001

$67.50 x 30% = $20.25
$72.50 x 33% = $23.92 – Sat. work

$59.50 x 30% = $17.85
$64.50 x 33% = $21.29 – Sat. work

### EFFECTIVE MAY 1, 2002

$69.50 x 31% = $21.54
$74.50 x 33% = $24.58 – Sat. work

$61.50 x 31% = $19.07
$66.50 x 33% = $21.95 – Sat. work

### EFFECTIVE MAY 1, 2003

$73.00 x 32% = $23.36
$78.00 x 33% = $25.74 – Sat. work

$65.00 x 32% = $20.80
$70.00 x 33% = $23.10 – Sat. work

### MINIMUM BILLABLE HOUR

### EXCLUDING HOLIDAY AND VACATION BENEFITS

### SEMI-DUMP RATES                    SIX-WHEELER RATES

### EFFECTIVE AUG. 20, 2001

$67.50 x 33% = $22.27
$72.50 x 36% = $26.10 – Sat. work

$59.50 x 33% = $19.64
$64.50 x 34% = $21.93 – Sat. work

### EFFECTIVE MAY 1, 2002

$69.50 x 34% = $23.63
$74.50 x 36% = $26.82 – Sat. work

$61.50 x 34% = $20.91
$66.50 x 35% = $23.28 – Sat. work

### EFFECTIVE MAY 1, 2003

$73.00 x 35% = $25.55
$78.00 x 36% = $28.08 – Sat. work

$65.00 x 35% = $22.75
$70.00 x 36% = $25.20 – Sat. work

# FOR ALL OTHER LOCAL UNIONS:

## MINIMUM BILLABLE HOUR

### SEMI-DUMP RATES

### SIX-WHEELER RATES

### EFFECTIVE AUG. 20, 2001

$67.50 x 32% = $21.60
$72.50 x 33% = $23.92 – SAT. WORK

$59.50 x 32% = $19.04
$64.50 x 33% = $21.29 – SAT. WORK

### EFFECTIVE MAY 1, 2002

$69.50 x 32% = $22.24
$74.50 x 33% = $24.58 – SAT. WORK

$61.50 x 32% = $19.68
$66.50 x 33% = $21.95 – SAT. WORK

### EFFECTIVE MAY 1, 2003

$73.00 x 32% = $23.36
$78.00 x 33% = $25.74 – SAT. WORK

$65.00 x 32% = $20.80
$70.00 x 33% = $23.10 – SAT. WORK

▼ *PLUS INCLUSION OF HOLIDAY AND VACATION BENEFITS*

## PIT & QUARRY MATERIAL HAUL

This shall include all dump truck driver employees who are engaged in the work of transporting building materials from pits, yards, quarries, and plants and inside pits, yards, quarries and plants, as well as to and from stockpiles located on construction projects, including prevailing wage projects. This shall not include the movement of such material from one point to another point on a job site.

It is understood that any work legally required to be paid at the prevailing rate shall be paid in accord with such legal requirements.

*FOR LOCALS 301 AND 330 ONLY:*

## WITH INCLUSION OF HOLIDAY AND VACATION BENEFIT

**SEMI-DUMP RATES**                    **SIX WHEELER RATES**

### EFFECTIVE AUG. 20, 2001

$60.00 x 30% = $18.00

$52.00 x 30% = $15.60

### EFFECTIVE MAY 1, 2002

$62.00 x 31% = $19.22

$54.00 x 31% = $16.74

### EFFECTIVE MAY 1, 2003

$63.00 x 32% = $20.16

$55.00 x 32% = $17.60

## EXCLUDING HOLIDAY AND VACATION BENEFITS

**SEMI-DUMP RATES**                    **SIX WHEELER RATES**

### EFFECTIVE AUG. 20, 2001

$60.00 x 33% = $19.80

$52.00 x 33% = $17.16

### EFFECTIVE MAY 1, 2002

$62.00 x 34% = $21.08

$54.00 x 34% = $18.36

### EFFECTIVE MAY 1, 2003

$63.00 x 35% = $22.05

$55.00 x 35% = $19.25

## *FOR ALL OTHER LOCAL UNIONS:*

### SEMI-DUMP RATES                    SIX WHEELER RATES

#### EFFECTIVE AUG. 20, 2001

$60.00 x 32% = $19.20                    $52.00 x 32% = $16.64

#### EFFECTIVE MAY 1, 2002

$62.00 x 32% = $19.84                    $54.00 x 32% = $17.28

#### EFFECTIVE MAY 1, 2003

$63.00 x 32% = $20.16                    $55.00 x 32% = $17.60

### ▼ *PLUS INCLUSION OF HOLIDAY AND VACATION BENEFITS*

As to pit, quarry and material hauling only, minimum billable hourly rates shall not be required to be paid if a driver does not make close to the average daily number of runs of the other drivers.

9.3 The Employer agrees that time clocks shall be installed and kept in proper working order so that there will be no misunderstanding about the employee's time; in the event that there is no time clock, the employee's bona fide personal record shall be accepted. This section shall apply only to hourly paid employees as opposed to percentage paid employees.

9.4 Where Employers have more than one size truck in their garage, the employees, when asked to drive different size trucks on the same day, shall be paid the highest rate of wages for that day.

9.5 The Employer agrees to notify the Union Representative prior to using new types of equipment which shall include, but not be limited to, axles not covered in 9.2 above; and the Negotiating Committees of the Union and the Association shall immediately negotiate a wage scale for this equipment, which wage rate shall be retroactive to the first day of use of the equipment.

9.6 The Employer shall pay employees their wages in full specified in the Agreement, weekly by check only. The Employer will state the exact number of regular and ovetime hours on each paycheck stub which the employee receives. Payroll errors of a substantial (e.g. eight hours or more) nature shall be corrected as soon as practicable and a supplemental check shall be issued if necessary. This section shall apply only to hourly paid employees as opposed to percentage paid employees.

9.7 Paychecks shall be available at the Employer's respective locations where the employee is employed not later than the end of the work shift on Friday.

9.8 Chauffeurs shall be paid from the time of leaving the garage until return to the garage. If a chauffeur is directed to drive an Employer's equipment to another location of his Employer and he finished his workday at such other location, he shall be paid for the time necessary to return to the location at which he originally started that day. This section shall apply only to hourly paid employees as opposed to percentage paid employees.

## *ARTICLE 10 – WORKING HOURS AND OVERTIME*

10.1 Eight (8) continuous hours (not including meal period referred to in Article 10.6(a)) shall constitute a workday. Forty (40) straight-time hours, Monday through Friday, shall constitute a workweek, without regard to the weekly pay period as established by the Employer. This section shall apply only to hourly paid employees as opposed to percentage paid employees.

10.2(a) Time and one-half (1½) shall be paid for all time worked over eight (8) hours in any one (1) day, and over forty (40) hours in any one week, Monday through Friday (and Saturday when an Employee works a Saturday as a make-up day as determined in this Section). Effective upon execution of this Agreement, if an Employee calls off or voluntarily leaves work before the workday is concluded for any reason during the Monday through Friday workweek, then Saturday shall be paid as a non-premium make-up day. Otherwise, Saturday shall be paid at the applicable overtime rate of time and one-half (1½) for all hours worked. This section shall apply only to hourly paid employees as opposed to percentage paid employees.

10.2(b) If any employee calls off at his own initiative on a regular scheduled workday during the workweek and is put to work on Saturday as a make-up day, he shall be guaranteed eight (8) continuous hours of work at his applicable straight-time hourly rate of pay for that day. This section shall apply only to hourly paid employees as opposed to percentage paid employees.

10.2(c) The Employer not notifying the Employee at least one (1) hour prior to reporting time that there will be no work that day, shall compensate him for two (2) hours of pay for reporting. If requested by the Employer, the Employee must stay on the job to qualify for the two (2) hours of pay. All reporting time shall be paid at the applicable straight-time hourly rate for that day. This section shall apply only to hourly paid employees as opposed to percentage paid employees.

10.3 Employees starting work after 12:00 Noon, shall be paid a fifty cents (.50¢) per hour shift differential in addition to their straight time hourly rate for all work performed on a second shift. All hours continuously worked shall be deemed part of the same workday that commenced with the first hour worked, regardless if the work extends into the next calendar day. All hours in each workday after the eighth hour shall be paid at time and one-half (1½), except that all hours worked on a Sunday shall be paid at double time. This section shall apply only to hourly paid employees as opposed to percentage paid employees.

10.4 If an employee is ordered to start work by the Employer, Monday through Friday, he/she shall receive not less than four (4) hours of continuous straight-time pay. Any employees who work more than four (4) hours shall not receive less than eight (8) hours of continuous straight-time pay. If requested by the Employer, the employee must stay on the job to qualify for the eight (8) hours of pay. If the employee starts work on Saturday, Sunday and holidays, he/she shall not receive less that four (4) hours of continuous straight-time pay, unless Saturday is a make-up day as outlined in this article, then he/she is guaranteed eight (8) hours of pay. This section shall apply only to hourly paid employees as opposed to percentage paid employees.

10.5 All work performed on Sundays shall be compensated at twice the hourly wage rate in accordance with the established rates contained in the Area-Wide Construction / M.A.R.B.A. Agreement.

10.6 This Section shall apply only to hourly paid employees, as opposed to percentage paid employees.

10.6(a) *Meal Period.* Each shift shall include an unpaid one-half (½) hour meal period.

10.6(b) Any Employee required to work through their meal period and does work through their meal period, shall be paid the overtime rate of time and one-half (1½) for such time worked.

10.6(c) The one-half (½) hour meal period shall commence between the fourth (4th) and end of the sixth (6th) hour on all shifts.

10.6(d) All Employees who work through their meal period shall be guaranteed not less than eight and one-half (8½) hours of continuous work paid in accordance with this Agreement. Any such work performed during the lunch period shall not be included in or counted as part of, the work guarantees provided for in 10.4, and shall be excluded from hours worked when computing daily and weekly overtime pay. This section shall apply only to hourly paid employees as opposed to percentage paid employees.

## *ARTICLE 11 - HOLIDAYS*

11.1 Employees covered by this Agreement shall be paid for the following holidays not worked.

| | |
|---|---|
| Memorial Day | Day before Christmas Day |
| Fourth of July | Christmas Day |
| Labor Day | New Year's Eve Day |
| Thanksgiving Day | New Year's Day |

When any such holiday falls on a Sunday, the following Monday shall be considered the holiday. Holiday compensation shall be calculated according to the following hourly rates:

| | |
|---|---|
| Effective August 20, 2001 | $22.18 |
| Effective May 1, 2002 | $22.98 |
| Effective May 2, 2003 | $23.78 |

14

Six-wheeler drivers shall be compensated at a rate of $0.10 per hour less than the abovementioned rates of pay.

11.2 Double time in addition to holiday pay shall be paid to employees for work performed on these holidays. Eight (8) hours of straight-time pay shall be paid to employees who do not work on the holidays.

11.3 If a paid holiday falls within an employee's scheduled vacation period, an additional day off with pay shall be added to the vacation in lieu of holiday pay. If any of the above listed holidays fall on Saturday the employee will receive eight (8) hours of straight-time pay for day not worked.

11.4 In cases where a holiday may be observed on different days by the State and Federal Governments, observation of the holiday will be in accordance with the Ready Mix and Material Industry.

11.5 To qualify for holiday pay, an employee must have been on the payroll for thirty-one (31) days prior to the holiday, and work the regular work day immediately preceding and after the holiday, if scheduled to work those days, unless excused from so working because of proven illness or injury to the employee, or death in the immediate family. If not scheduled to work those days, an employee then must have worked a minimum of eight (8) hours either two (2) weeks prior or two (2) weeks after the holiday.

For the purposes of this Section, immediate family is defined as spouse, mother, father, sister, brother and children.

11.6 Any employee scheduled to work on a Saturday prior to the holiday and does not report for work, shall not be entitled to the holiday pay except as provided for in Section 11.5 above.

## *ARTICLE 12 - VACATIONS*

12.1 Any employee, working on a straight-time basis, who in the preceding year has worked continuously for the same Employer and has worked nine hundred (900) straight-time hours or more in such year, shall be entitled to one (1) week vacation with pay, computed by multiplying the straight-time hourly rate of such employee by forty (40).

12.2 Any employee working on a straight-time basis, who in the preceding three (3) years has worked continuously for the same Employer and has worked 900 straight-time hours or more, shall be entitled to a two (2) week vacation with pay, computed by multiplying the straight-time hourly rate of such employee by eighty (80).

12.3 Any employee working continuously for the same Employer will after his/her third (3rd) anniversary date, be entitled to his/her proper vacation regardless of hours worked during his/her anniversary year.

15

12.4 Any employee working continuously for the same Employer for ten (10) years shall be entitled to three (3) weeks vacation with pay computed by multiplying the straight-time hourly rate of such employee by one hundred and twenty (120).

12.5 Any employee working continuously for the same Employer for fifteen (15) years shall be entitled to four (4) weeks vacation with pay compute by multiplying the straight-time hourly rate of such employee by one hundred and sixty (160).

12.6 The scheduling of vacation periods by the Employer shall be based first upon the convenience of operation of the plant, and based upon the seniority of the employee. Vacations shall not be pro-rated nor carried over or accumulated from one year to the next.

12.7 An employee who terminated or is laid off and who has been in the employ of the Employer more than one (1) year will receive pay for any vacation to which he/she is entitled by this Article, if such vacation has not been taken.

12.8 Vacation compensation shall be calculated according to the following hourly rates:

| | |
|---|---|
| Effective August 20, 2001 | $22.18 |
| Effective May 1, 2002 | $22.98 |
| Effective May 2, 2003 | $23.78 |

Six-wheeler drivers shall be compensated at a rate of $0.10 per hour less than the abovementioned rates of pay.

Employees are to receive their vacation pay at the time he/she elects to take their vacation.

12.9 In computing vacation credits, all time lost by an employee where he has been covered by Workmen's Compensation and paid vacation time shall be credited as hours worked toward the required nine hundred (900) hours.

12.10 Eligibility for vacation shall begin with the date of employment of each individual employee, and each year of eligibility shall start with such date.

12.11 Any member having three (3) weeks or more vacation will be permitted to take at least two (2) weeks during the summertime (May through September), provided such vacations do not interfere with the orderly operation of the business. Vacations will be scheduled on a year-round basis, and employees shall select their vacations by seniority and must have scheduled their vacations by April 30th.

## ARTICLE 13 – GENERAL CONDITIONS

13.1(a) *Seniority.* Seniority as the term is used herein, means length of continuous service of any regular employee from the date of first employment by the Employer as hereinafter provided.

13.1(b) Regular Owner/Drivers seniority rights shall follow the established practice of each individual signatory hereto.

13.1(c) New employees shall be regarded as probationary employees until they have acquired seniority rights. Probationary Employees shall attain seniority rights when they have been actually at work in the employ of the Employer for a total of thirty (30) worked days or sixty (60) calendar days, whichever comes first. There shall be no responsibility for the re-employment of probationary Employees if they are laid-off or discharged prior to attaining seniority rights. After thirty (30) worked days, or sixty (60) calendar days, whichever comes first, of employment as above defined, the names of such Employees shall be placed on the seniority list as provided in Section 13.1 (a) with a service credit of thirty (30) days, reverting back to the first day of hire. The Union shall receive a seniority list upon request.

Any Employee covered by this Agreement who accepts a promotion to a salaried position with the Employer shall retain all previously accumulated seniority for a period of twelve (12) consecutive months.

13.1(d) In case of layoff due to lack of work, employees shall be laid-off in reverse order of seniority, providing the senior employee is qualified to replace the laid-off employee.

13.1(e) The recall procedure shall be the reverse of the layoff procedure. When work increases, employees laid off shall be notified to report to work in order of seniority.

13.1(f) Failure by an employee to return to work within five (5) consecutive working days after notice or attempted notice, by telephone or certified mail to the Employee's last known phone number or address, and a copy being sent to the Local Union Office, will result in loss of seniority rights. The Local Union Office shall be notified by the Employer the same day as the employee. The five (5) consecutive days do not begin to run until the Union has been notified by the Employer.

The Union may furnish temporary drivers, if required to do so, until the laid-off employee returns to work.

13.1(g) If there are any breakdowns or shut-downs during the day, an employee whose vehicle is broken down or whose operations are shut-down shall go home for the completion of the work day and shall be compensated as provided in Article 10; however, the Employer may assign him to perform other duties at his prevailing wage rate for that day. When a vehicle shall be out of service for more than that day, seniority shall prevail on the following day.

13.1(h) Seniority shall be broken by discharge, voluntary quit, failure to report after five (5) working days as outlined in Section 13.1(f), or by layoff for twelve (12) consecutive months.

13.1(i) All employees domiciled at the same location will be assigned to work according to their seniority, providing they are qualified. This will not affect the daily starting time.

13.2 When hauling blacktop or similar material, drivers shall have a platform to stand on to roll their tarps at the plant.

13.3 If an employee is directed to take a truck to a job site or a garage and leave it at same, he shall be compensated at the applicable rate of compensation he was earning for that day until he returns to his/her original starting location.

13.4 *Mechanics Only.* Shift seniority shall prevail on selection of shifts in truck shop providing the mechanics have equal qualifications.

13.5 When an employee works or is assigned to a particular classification of work throughout the workweek, he shall have first consideration regarding Saturday overtime work for that classification based upon seniority within that classification.

## ARTICLE 14 - LEAVE OF ABSENCE

14.1 Any employee desiring a leave of absence from his/her Employer from employment from December 1 to March 1 in any given year shall make written application for same, and said application shall be signed by him/her and shall secure written permission from both the Union and the Employer. This written permission shall consist of three (3) copies of the approved application, one (1) each for the Employer, the Union and the employee. The maximum leave of absence shall be for ninety (90) days and may be extended by written permission from both the Union and the Employer for an additional thirty (30) days. However, during the period of such leave, including any extensions thereof, the Employer shall not be liable for the payment of any Health and Welfare or Pension/Severance benefit contributions for the employee concerned. Any such payments shall be handled in accordance with Article 17, Appendix A.

14.2 Compliance herewith shall not result in the loss of seniority rights and the employee shall retain all benefits and rights under this Agreement with his/her Employer.

## ARTICLE 15 - PROTECTION OF RIGHTS

15.1 It shall not be a violation of this Agreement, and it shall not be cause for discharge or discipline for an employee covered by this Agreement to refuse to cross a lawful primary picket line established by a Local Union and sanctioned by Teamsters Joint Council No. 25 (I.B.T.) around the premises of an Employer (other than an Employer at whose premises the employees are covered by this Agreement), if the employees of such Company are engaged in a strike ratified or approved by any such Local Union or if such strike has been sanctioned by Joint Council No. 25. A properly designated officer of the Local Union involved, will, upon request made to the Secretary-Treasurer of that Local Union, obtain the information and inform an Employer covered by this Agreement within twenty-four (24) hours if such a picket line established by a Local Union or sanctioned by Joint Council No. 25 has been authorized by that Local Union. This provision shall not apply to picketing at an entrance jointly used by an Employer at whose premises the employees are covered by this Agreement and some other company, where the picketing and strike is directed against the other company.

# ARTICLE 16 - SALE AND TRANSFER

16.1 When the Employer sells or transfers its assets to another party, the seller shall pay all accumulated vacation allowances or other benefits due bargaining unit employees on or before the closing of the sale or transfer. The purchaser shall recognize the appropriate Local Union, shall offer all bargaining unit employees employment and shall continue wages, health insurance and pension benefits until a collective bargaining agreement or impasse in reached.

16.2 The Employer shall notify the Union of the sale or transfer of the business at least thirty (30) days prior to the closing date.

16.3 In the event the Employer fails to notify the Union, in accordance with Section 16.2 above, the Employer shall pay six (6) weeks of additional Health/Welfare and Pension contributions for each bargaining unit employee.

# ARTICLE 17 – HEALTH AND WELFARE AND PENSION SEVERANCE TRUST FUND

17.1 The Employer shall contribute into a Trust set up by Trust Agreements now in effect in the aforementioned Local Unions for the payment of Health and Welfare or Pension/Severance benefits, as the case may be, as determined by the appropriate Board of Trustees, the amounts shown in 17.2 below are per week for an employee covered by this Agreement, in accordance with the requirements set forth in the appropriate Appendix of this Article.

17.2 *Schedule of Contributions:*

17.2(a) **Health and Welfare Fund**

For Employers and their Employees who have not been previously covered by a Teamster pension or severance plan, their participation shall begin on October 1, 2001, or at such later time as they become bound to this Agreement.

*RATES LISTED BELOW ARE BASED UPON WEEKLY CONTRIBUTIONS:*

| Effective Date | L.U.179 | L.U. 301 | L.U. 330 | L.U. 673 | L.U. 705 |
|---|---|---|---|---|---|
| 10/01/01 | $158.00 | $158.00 | $158.00 | $158.00 | $164.00 |
| 05/01/02 | $162.00 | $168.00 | $162.00 | $162.00 | $164.00 |
| 05/01/03 | $168.00 | $178.00 | $168.00 | $168.00 | $164.00 |

| Effective Date | L.U. 710 | L.U. 731 | L.U. 786 |
|---|---|---|---|
| 10/01/01 | $162.70 | $160.00 | $170.00 |
| 05/01/02 | $170.00 | $170.00 | $180.00 |
| 05/01/03 | $180.00 | $180.00 | $184.00* |

**L.U. 325**    $3.40 Per Employee/Per All Hours Worked.

**L.U. 731**    $4.00 Per Employee/Per All Hours Worked.

**L.U. 786**    *With inclusion of option to allocate.

**FOR LOCAL 731 ONLY:** The Employer shall pay the above listed contribution rates to the Health and Welfare Fund, Excavating, Grading and Asphalt Craft, Local 731, I.B. of T. (hereinafter called "Health and Welfare Fund") located at 1100 East 31st Street, La Grange Park, Illinois 60526:

*Penalty for Failure to Pay Health and Welfare.* The Employer recognizes the necessity of making prompt Health and Welfare contributions, the possibility that Employees' benefit standing will be placed in jeopardy if contributions are not timely made, and the concern of the Union that all eligible Employees are covered by such contributions.

Whenever the Employer is delinquent in making payments to the Health and Welfare Fund, the Union may strike the Employer to force payments.

This provision shall not be subject to and is specifically excluded from the grievance procedure (Article 19). Additionally, in the event the Employer has been found to be delinquent, the Employer shall be required to pay in addition to the actual delinquency, twenty percent (20%) of the delinquent amount as liquidated damages, and accountant and attorney fees including court costs.

All Employers participating in the Health and Welfare Fund must be incorporated.

17.2(b) **Pension Fund**

*RATES LISTED BELOW ARE BASED UPON WEEKLY CONTRIBUTIONS:*

| Effective Date | L.U.179 | L.U. 301 | L.U. 330 | L.U. 673 | L.U. 705 | L.U. 710 |
|---|---|---|---|---|---|---|
| 10/01/01 | $109.00 | $127.00 | $109.00 | $109.00 | $151.00 | $162.70 |
| 05/01/02 | $117.00 | $137.00 | $117.00 | $117.00 | $165.00 | $170.00 |
| 05/01/03 | $123.00 | $147.00 | $123.00 | $123.00 | $179.00 | $179.00 |

**L.U. 325**    $5.70 Per Employee/Per All Hours Worked.

**L.U. 731**    $2.80 Per Employee/Per All Hours Worked.

**L.U. 786**    Effective 10/01/01 $ 44.00 / $ 79.00*
Effective 05/01/02 $ 80.00
Effective 05/01/02 $120.00**

*Any previously signatory Employer contributing at the rate of $44.00 will immediately have their rate increased to $79.00 upon ratification of this Agreement.

**With inclusion of option to allocate.

**FOR LOCAL 731 ONLY:**  The Employer shall pay to the Local Union No. 731 Excavators and Pavers Pension Fund (hereinafter called "Pension Fund"), located at 1100 East 31st Street, La Grange Park, Illinois 60526, the sum of Two Dollars and Eighty Cents ($2.80) per hour effective June 1, 2001, for each hour worked by the Employee covered by this Agreement.

The Employer shall also submit a Remittance Report in a form to be furnished by the Administrators of the Health and Welfare and Pension Fund showing the name of each Employee employed during the period for which the report is made.  The Remittance Form and required contributions shall be submitted each month to the Administrator of each Fund not later than the twentieth day of the month following the month for which contributions are due.

17.2(c) For all Locals, during the first year of this Agreement, beginning October 1, 2001, or at such later time as they become bound to this Agreement, employees of employers not previously covered by a Teamsters Pension or Severance Plan, shall be covered by the applicable pension or severance plan in the amount of a contribution for each employee of $40.00 per week worked. Beginning the second year of this Agreement, the contribution shall be raised to $80.00 per week of work.  Beginning the third year of this Agreement, the contribution shall be increased to $120.00 per week worked.  Any rules pertaining to partial weeks worked that may exist with respect to a particular Local's Pension or Severance Plan will also apply to those contribution requirements.

The Employer agrees that it is bound by and is a party to the Trust Agreements creating the Health and Welfare Fund and the Pension Fund, and all prior and subsequent amendments thereto, as if it had signed the original copy of each of the said Trust Agreements, both of which said Agreements being incorporated herein by reference and made a part hereof; the Employer hereby designates as its representatives on the Board of Trustees of said Funds such Trustees as are named in said Agreements and Declarations of Trust, as Employer Trustees, together with their successors selected in the manner provided in said Agreements and Declarations of Trust, as they may be amended from time to time and further agrees to be bound by all action taken by said Employer Trustees regarding and pursuant to the said Agreements and Declarations of Trust as amended from time to time.

*Failure to Pay Pension.*  The Employer recognizes the necessity of making prompt Pension contributions when required, the possibility that Employees' benefit standing could be placed in jeopardy if required contributions are not timely made,  and the concern of the Union that all eligible Employees are covered by such required contributions.

Whenever the Employer is delinquent in making required payments to the Pension Fund, the Union may strike the Employer to force required payments.  This provision shall not be subject to and is specifically excluded from the grievance procedure (Article 19).  If an Employer fails to pay any required contributions due in accordance with this Article, the Trustees of the respective Fund may assess the Employer twenty percent (20%) of the required contributions due as liquidated damages in addition to all reasonable attorney fees, accountant fees and cost of collection, including court costs.

All Employers participating in the Pension Fund must be incorporated.

17.3 *Conditions*

17.3(a) Provisions and conditions relating to payment of the foregoing benefits are set forth in Appendix A for Health and Welfare and in Appendix B for Pension of this Article.  These appendices form part of and are deemed incorporated into this Agreement.

17.3(b) With respect to benefits, any disagreement as to eligibility, time and method of payments, payments during periods of employee illness or disability, methods of enforcement of payment and related matters shall be determined by the Trustees of the Fund concerned.  The Fund shall, in all respects, be administered in accordance with the Trust Agreement.

17.4 It is understood and agreed that the sole liability of the Association, or any Employer, under the above entitled Health and Welfare and Pension/Severance programs, shall be the payment of its contribution to the above respective Trusts, as provided above.  Neither the Association nor any Employer shall be liable for the purchase of any Health and Welfare or Pension/Severance insurance, or the payment of any Health and Welfare or Pension/Severance benefit.

17.5 All Trust Agreements jointly entered into and executed pursuant to the above provisions shall be considered as a part of this Agreement to the extent they are not inconsistent therewith.

17.6 Employer hereby agrees to be bound by the Agreements and Declarations of Trust creating said Fund and by any future amendments thereto to the extent they are not in conflict with this Agreement, and hereby designates as its representatives on the Boards of Trustees, such Trustees as are named in said Agreements and Declarations of Trust, as Employer Trustees, together with their successors selected in the manner provided in said Agreements and Declarations of Trusts, as they may be amended from time to time; and further, agrees to be bound by all action taken by said Employer Trustees pursuant to the said Agreements and Declarations of Trust as amended from time to time.

17.7 The Employer agrees to make available to the Trustees or their designee during normal business hours, payroll records and other employment records necessary to ascertain that contributions required under this Article have been paid correctly and in full.

17.8 If an Employer fails to pay any contributions due in accordance with Article 17, the Trustees of the Fund concerned may assess the Employer a charge of 1½% per month of the contributions due, in addition to all reasonable attorneys' fees and costs of collection and costs of audit. The contributions for each employee shall not exceed fifty-two (52) weeks in any calendar year, excepting those years which have fifty-three (53) Saturdays. The contributions of each Employer shall be paid to said Fund on a monthly basis and shall be sent by each Employer not later than the fifteenth (15th) day of the month following the first month of employment.

17.9 The obligation to make Health and Welfare and Pension/Severance contributions shall continue during periods when a new Collective Bargaining Agreement is being negotiated, unless there is a work stoppage or lockout.

## APPENDIX A - HEALTH AND WELFARE

A.1 Each Employer shall pay the amount per week stated in Article 17.2(a) as of the appropriate date stated therein for each regular employee covered by this Agreement who performs any work in such week into a Trust Fund set up by Trust Agreements now in effect in the aforementioned Local Unions for the payment of Health and Welfare benefits as determined by a Board of Trustees. Payment shall be retroactive to the first day of employment for new employees, provided they have completed their probationary period.

A.2(a) The amount in accordance with Article 17.2(a) per employee per week, shall be contributed for each employee, other than casual or emergency employees covered under the Collective Bargaining Agreement for any week in which such employee performs any service for the Employer, even when such service is not performed under the terms of the Collective Bargaining Agreement.

A.2(b) Payment shall be made on casual or emergency employees who are defined, for this purpose only, as employees who are not on a seniority list and such payment shall be made for the days actually worked at the rate of twenty percent (20%) of the weekly amount stated in Article 17.2(a) for each such day.

23

A.2(c) If an employee is absent because of non-occupational illness or injury, the Employer shall continue to make the required contribution for a period of four (4) weeks.

A.2(d) If an employee is absent because of occupational illness or injury, the required contribution shall be made until the employee returns to work, or for a period of one (1) year, whichever is shorter.

A.2(e) All leaves of absence, when granted by the Employer in addition to the requirements of the parties, shall be conditioned upon the Employer, the Union and the employee making satisfactory arrangements for the employee to pay the applicable weekly contribution to the Health and Welfare Fund, either through his Employer or directly to the Union for the period of such granted leave of absence.

A.2(f) Payment into the Health and Welfare Fund shall be made during periods of paid vacation subject to the fifty-two (52) week annual limit stated in Article 17.8.

A.2(g) The Employer recognizes the necessity of making prompt Health and Welfare contributions, the possibility that employee's benefit standing will be placed in jeopardy if such contributions are not timely made, and the concern of the Union that all eligible employees are covered by such contributions.

A.2(h) Whenever the Employer is delinquent in making payments to the Health and Welfare Fund, the Union may strike the Employer to force payments. The provision shall not be subject to and is specifically excluded from the grievance procedure (Article 19). Additionally, in the event the Employer has been found to be delinquent, the Employer shall be required to pay in addition to the actual delinquency, ten percent (10%) of the delinquent amount as liquidated damages, and accountant and attorneys fees including court costs.

A.2(i) A calendar week is Sunday through Saturday.

## A.3 Health & Welfare Reserve (FOR LOCALS 301 & 330 ONLY)

The Employer agrees to deduct from the paycheck of employees covered by this Agreement, voluntary contributions to a reserve for the Health and Welfare Fund. The Employer, upon receipt of a written check-off authorization form signed by the employee, agrees to deduct the amount of $.50, $.75 or $1.00 per hour, whichever is specified by the employee, for the express purpose of reserving such monies to be used solely for the purpose of payment of self-contribution to the Health and Welfare Fund while the employee is off work, and the employer is not obligated to contribute on his behalf.

Monies so deducted shall be kept separate and apart from the Employer's general funds, and shall be held in trust by the Employer for the benefit of the employee until remitted to the Health and Welfare Fund.

The Employer shall remit such deductions on a monthly basis to the local Union's Health and Welfare Fund, the total amount deducted, along with the name of each employee on whose behalf the deduction is made, the employee's social security number and the amount deducted from that employee's paycheck.

If an employee does not deplete the entire amount of his "reserve" contributions, the remainder will be refunded back to the employee on June 1st of the following year. It is the express responsibility of the employee to cover any deficit which may occur after his/her "reserve" contributions have been depleted.

Whenever the employee wishes to discontinue such deductions, he/she shall notify both the Employer and the Local Union in writing before the twelfth (12th) day of the month, to discontinue such deductions effective the first of the following month.

It is agreed that all such deductions shall be on a voluntary basis only.

It is further agreed that this Section A.3 shall not apply until the Local Union's Health and Welfare Fund has established a procedure to receive and account for the voluntary employee contributions provided for in this Section or until the Local Union has established a procedure to receive and account for the voluntary employee contributions provided for in this section.

A.4 **FOR LOCAL 786 ONLY:** Each Employer shall contribute to Local 786 Building Material, Chauffeurs, Teamsters and Helpers Welfare Fund of Chicago, which shall be jointly administered by Employer Trustees of Union Trustees as provided in the Trust Agreement, the amount per week stated in Article 17.2(a) as of the appropriate date stated therein for each employee covered by this Agreement who performs work on any two (2) calendar days in any calendar week, regardless of the number of hours worked, beginning with the first such week of employment. Contributions shall also be made for the weeks of paid vacation, but not if the employee's vacation time occurs during a period of layoff, leave of absence for illness.

A.5 **FOR LOCAL 786 ONLY:** Whenever the Trustees of the Local 786 Building Material, Chauffeurs, Teamsters and Helpers Welfare Fund of Chicago shall certify to the Employer that the assets of said Fund are less than Two Hundred Fifty Thousand Dollars ($250,000.00), each Employer shall contribute, effective 30 days after receipt of notice thereof to the Employer, an additional amount (not to exceed Eighty Cents ($.80) per week) as determined by said Trustees, for each week of employment as defined by said Trustees, for each week of employment as defined in A.1. Such additional contributions shall continue to be made by such Employer until the said Trustees shall certify to the Employer that the assets of said Trust exceed Five Hundred Thousand Dollars ($500,000.00), at which time such additional contributions shall cease and shall not be again resumed until the said Trustees shall again certify to the Employer that the assets of the Welfare Fund Trust are less than Two Hundred Fifty Thousand Dollars ($250,000.00).

### *APPENDIX B - PENSION*

B.1 The parties to this Agreement agree to establish a Pension Fund or to pay into an established Pension Fund for the purpose of providing Pension benefits for the employees covered by this Agreement. The Pension Fund shall be administered by a Board of Trustees in accordance with a Trust Agreement.

B.2(a) Each Employer shall pay into the Pension Fund the amount per week stated in Article 17.2(b) and 17.2(c) as of the appropriate date stated therein for each regular employee covered by this Agreement who performs work on any two (2) calendar days in any calendar week.

Employer's signatory to this Agreement with Teamsters Local Union No. 301 and Teamsters Local Union No. 330, the <u>PENSION ONLY</u> will be paid in the following manner:

Starting with the first worked day of the week, the Employer will pay twenty-five percent (25%) of the weekly contribution for each day the employee worked (Sunday through Saturday), with a cap of four (4) days.

The total amount of contributions for Health and Welfare and Pension from Teamsters Local Union No. 301 and 330 is the same, however, the individual amounts in each Union may vary.

B.2(b) Payment shall be made on casual or emergency employees who are defined, for this purpose only, as employees who are not on a seniority list and such payment shall be made for the days actually worked at the rate of twenty percent (20%) of the weekly amount stated in Article 17.2(b), and 17.2(c) for each such day.

B.2(c) Pension contributions shall be paid for employees who have been on the Employer's payroll for not less than thirty-one (31) days. If an employee is absent because of non-occupational illness or injury, the Employer shall continue to make the required contributions for a period of four (4) weeks.

B.2(d) If an employee is absent because of occupational illness or injury, the required contributions shall be made until the employee returns to work or for a period of one (1) year, whichever is shorter.

B.3 **FOR LOCAL 786 ONLY:** *Pension Trust Fund.* Each Employer shall contribute to Local 786 Building Material, Chauffeurs, Teamsters and Helpers Pension Fund of Chicago, which shall be jointly administered by Employer Trustees of Union Trustees as provided in the Trust Agreement, the amount per week stated in Article 17.2(b) as of the appropriate date stated therein for each employee covered by this Agreement who performs work on any two (2) calendar days in any calendar week, regardless of the number of hours worked, beginning with the first such week of employment. Contributions shall also be made for the weeks of paid vacation, but not if the employee's vacation time occurs during a period of layoff or leave of absence for illness.

B.4 *Severance Trust Fund.* Each Employer shall contribute to the Local 786 Severance Fund, the amount per week stated in Article 17.2(a) as of the appropriate date stated therein for each employee who performs work on any two (2) days in any calendar week, regardless of the number of hours worked; provided the employee has been on the Employer's payroll for at least thirty (30) days.

## ARTICLE 18 - WORK PRESERVATION AND PROTECTION OF STANDARDS

18.1(a) The Employer agrees that neither it nor any of its subcontractors on the job site will subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure, road or other work (including quarries, rock, sand and gravel plants, asphalt plants, ready-mix concrete plants established on or adjacent to the job site to process or supply materials for the convenience of the Contractor for job site use) except to a person, firm or corporation, signatory to this labor agreement or an Agreement that meets or exceeds the terms of this Agreement.

18.1(b) The Employer agrees that neither it nor any of its subcontractors for off-site work will subcontract work covered under this Agreement to any Employer who fails to pay an amount equal to or greater than the wage and fringe benefit amounts provided for in this Agreement.

18.1(c) The term overflow work as provided herein is defined as any work in excess of the work otherwise assigned to employees and regular owner-operators. The Employer may subcontract overflow work when all of its employees and regular owner-operators are fully employed. Overflow work may be performed by persons other than Employer's employees and regular owner-operators provided that such subcontracting is not used as a subterfuge to evade the provisions of this Agreement and is done in accordance with all of the other terms of this Agreement. Casual Owner/Drivers and other persons performing overflow work shall be compensated no less than the amount equal to the wages (percentage pay) and fringe benefits being paid to employees and regular owner-operators covered by this Agreement.

18.1(d) The Employer agrees that it will not lease, assign, or subcontract any bargaining unit work to any person, partnership, corporation or business enterprises until, or unless all of the Employer's equipment and work force and regular owner-operators are engaged, and/or the Employer does not own the necessary equipment to perform the work.

18.1(e) If any subcontractor shall become delinquent in the payment or meeting of the obligations set forth above, the Union shall promptly give written notice thereof to the Employer and Subcontractor specifying the nature and amount of such delinquency. More than one such notice may be given with respect to delinquencies. If such notice is given, the Employer shall withhold the amount claimed to be delinquent up to the amount of any sums due and owing by the Employer to such Subcontractor for the job or jobs involved in the delinquency and shall pay and satisfy there from the amount up to the amount withheld of such delinquency by such Subcontractor as follows:

If such Subcontractor does not dispute the existence or amount of such delinquency, the Employer shall forthwith pay the amount of such delinquencies, up to the amount withheld, to the person or fund entitled thereto. Any dispute as to the existence or amount of such delinquency shall be settled by the Union and Subcontractor as provided in Article 19 hereof, if the subcontractor is a signatory to this Agreement, and the Employer shall pay to the person or Funds entitled thereto the amount of such delinquency, up to the amount withheld, as so determined and costs incurred. If the Subcontractor is not a signatory to this Agreement, then the Trustees of the appropriate Fund may sue the Subcontractor involved.

The Employer shall not be liable for any such delinquency occurring more than sixty (60) days prior to the receipt of such written notice from the Union or for any amount beyond what was withheld by the Employer.

18.1(f) If the Union gives written, signed notice to an Employer that a particular carrier is not in compliance with the requirements of this Article with respect to paying the appropriate amounts set forth in this Agreement, the Employer will not contract with such carrier until such time as the said Union gives written notice to the Employer that the carrier is in compliance. The Employer will have reasonable time not to exceed forty-eight (48) hours after notice has been received to cease contracting with a particular carrier in order to make arrangements with a different carrier to handle the work. Upon written, signed notice to the Employers from the Union concerned, that a particular hauler is not in compliance with the foregoing wage rates and other conditions, the Employers will not contract further with said hauler until such time as the Union gives written notice to the Employer that the hauler is in compliance.

18.2 The Union agrees to indemnify and save the Employer and the Association harmless against any claim, demand, suit or other from of liability (including attorney fees and other related expenses) which shall arise out of or by reason of action taken by the Employer with respect to a carrier as a result of the Employer's reliance on notice furnished by the Union pursuant to this Article.

18.3 All past practices contrary to the express conditions under this Article are null and void. No practice contrary to the terms of this Agreement shall hereafter be recognized without prior written notice to the Union, and prior written agreement from the Union, regarding such practice.

18.4 A committee of three (3) members appointed by the Association and three (3) members appointed by Teamsters Joint Council No. 25 ("Joint Council") shall have the authority to review any collective bargaining agreement covering all or part of the work covered under this Agreement to determine whether it meets the economic standards of this Agreement. Either the Association or the Joint Council may request such a review. Moreover, the Joint Council shall be required to provide a copy to the Association of any agreement covering all or a portion of the work covered under this Agreement, before approving said agreement.

If the Association/Joint Council Committee established hereunder determines an agreement to be substandard, it shall be null and void. If the Committee is unable, by majority vote, to agree on whether the agreement is substandard, such dispute shall be referred to an arbitrator under the procedures set forth in Article 19, Sections 19.10 through 19.12, of this Agreement. If the agreement is found by the arbitrator to be substandard, it shall be considered null and void by all concerned. If the agreement, despite the ruling of the arbitrator, remains in effect, the Association member signatory to this Agreement shall be free to adopt the terms of the agreement found to be substandard.

18.5 Except as provided for above, any and all disputes involving this Article 18 shall be resolved exclusively through the grievance and arbitration provisions of Article 19 of this Agreement.

18.6 Owner/Drivers operating their own vehicle shall be considered as subcontractors as provided in this Article.

## ARTICLE 19 – GRIEVANCES AND ARBITRATION

19.1 A grievance is any dispute over the meaning, interpretation, application or violation of this Agreement brought by an employee or the Union.

19.2 Within seven (7) working days of the date the event giving rise to the grievance occurred, or reasonably should have been known, the employee, either alone or with the assistance of his/her Union representative will discuss the matter with his/her immediate supervisor. The supervisor will give a written response within five (5) working days thereafter.

19.3 In the event that the grievance is not resolved, it shall be reduced to writing and referred for conference and resolution by designated officials of the Union and the Employer. Grievances brought by the Union concerning issues generally affecting the bargaining unit may be initiated at this step of the procedure.

19.4 In the event the grievance cannot be resolved under the provisions set forth in Section 19.3 within seven (7) working days after the filing of the written grievance, the grievance can be submitted to the Joint Grievance Committee created in this Article.

19.5 The Union and the Association shall together create and appoint a Joint Grievance Committee consisting of an equal number of members representing Employers and the Unions, but no less than two (2) from each group. The Joint Grievance Committee shall, at its first meeting, formulate rules of procedure to govern the conduct of its proceedings.

19.6 It shall be the function of the Joint Grievance Committee to resolve disputes and grievances which have not been settled at earlier stages of the procedure.

19.7(a) No Employer shall sit on a panel of the Joint Grievance Committee which is hearing or considering a grievance or dispute arising from the Employer's own operations.

19.7(b) No Union representative shall sit on a panel of the Joint Grievance Committee, which is hearing or considering a grievance or dispute arising from a job over which such Union has geographical jurisdiction.

19.8 When the Joint Grievance Committee, by a majority vote, decides a dispute or grievance, such decision shall be final and binding on all parties.

19.9 When the Joint Grievance Committee is unable to decide its dispute or grievance by majority vote, the grievance may be submitted within thirty (30) days to grievance mediation procedure provided by Federal Mediation and Conciliation Service (FMCS).

19.10 In the event the parties cannot resolve the issue through the grievance mediation procedure, the grievance may be submitted with ten (10) days to an Arbitrator jointly selected by the Employer and the Union from a panel of seven (7) Arbitrators provided by the Federal Mediation and Conciliation Service. Each party shall alternately strike names from the list until one Arbitrator remains. The decision of the Arbitrator shall be final and binding upon all parties to the dispute.

19.11 The expense of the Arbitrator shall be jointly paid by the Employer and the Union between whom the grievance or dispute exists.

19.12 The Arbitrator shall have no authority to add to, detract from, or in any way alter the provisions of this Agreement.

## ARTICLE 20 - ECONOMIC LOSS

20.1(a) Employees covered by this Agreement receiving higher wages or more attractive working conditions shall suffer no reduction by virtue of this Agreement.

20.1(b) No employee shall receive less than the minimum billable hour guarantee when paid on a percentage basis (except for agreed upon exceptions provided for herein) or, where applicable, the minimum hourly rate provided for in this Agreement.

## ARTICLE 21 – NO STRIKES OR LOCKOUTS

21.1 In view of the fact that parties have provided for an orderly procedure for settling differences of opinions and disputes, the Union agrees that for the duration of this Agreement, there shall be no strikes, except as otherwise herein provided, and the Employer agrees that during the life of this Agreement there shall be no lockouts. The provisions of this Article shall not apply to any Employer that refuses to follow the procedures outlined in Article 18.

21.2 It is agreed that in all cases of an unauthorized strike, slow-down, walk-out or any unauthorized cessation of work, the Union shall not be liable for damages resulting from such unauthorized acts of its members. The Union shall take immediate action to terminate any strike or stoppage of work which is not authorized by it without assuming liability therefore.

## ARTICLE 22 - INSPECTION PRIVILEGES

22.1 Authorized representatives of the Union shall have access to the Employer's establishment at all reasonable times for the purpose of adjusting disputes, investigating working conditions, collecting dues, other authorized deductions, and ascertaining compliance with this Agreement. The authorized representative shall have the right to inspect and audit those specific payroll records, time cards and sheets as may relate to a particular grievance or grievances alleging non-payment or improper payment of wages, Health and Welfare or Pension contributions. Such records shall be produced at a mutually agreed upon time and place.

22.2 Employers shall keep a permanent daily payroll record of all employees and of hours worked by employees employed on a timely basis, indicating starting and quitting time. Notwithstanding the limitations of 22.1 above, such records shall be preserved for a period of not less than three (3) years and shall be subject to examination by the Union, but the Employer shall have the right to be present during said examination.

## ARTICLE 23 – JOB ACCESS AND UNION STEWARDS

23.1 The Business Representative shall have the privilege to visit the Employers place of business and any job site to enforce the provisions of this Agreement.

23.2(a) The Employer recognizes the right of the Union to designate job stewards. The authority of job stewards so designated by the Union shall be limited to, and shall not exceed the following duties and activities:

(i) The investigation and presentation of grievances with his Employer or the designated Employer representative in accordance with the provisions of the Collective Bargaining Agreement.

(ii) The transmission of such messages and information which shall originate with, and are authorized by, the Local Union, or its officers, provided such messages and information:

> (a) Have been reduced to writing; or,
> (b) If not reduced to writing, are of a routine nature and do not involve work stoppages, slow down, refusal to handle goods or any other interference with the Employer's business.

23.2(b) Job stewards have no authority to take strike action or any other action interrupting the Employer's business.

23.2(c) The Employer recognizes these limitations upon the authority of job stewards and shall not hold the Union liable for any unauthorized act by the job stewards. The Employer, in so recognizing such limitations, shall have the authority to impose discipline, including discharge, in the event the steward has taken unauthorized strike action, slow down, or work stoppage in violation of this Agreement and any action taken by the Employer shall not be subject to the grievance and arbitration procedure.

23.3 A job steward shall be a competent working Teamster.

23.4 A steward shall not leave the job during working hours unless authorized by the Employer.

## ARTICLE 24 - CONDITIONS OF EMPLOYMENT

24.1 Employees shall give to the Employer a fair and honest day's work, and it shall be a violation of this Agreement for any chauffeur to loiter with a truck.

24.2 Employers who require their employees to wear uniforms shall furnish same without cost to the employee. The Employer shall further launder and take care of all such furnished uniforms at no cost to the employee.

24.3 The Employer shall furnish the employees an adequate sanitary toilet and washroom facility in accordance with OSHA regulations.

24.4 Employees shall comply with the safety rules of their Employers.

24.5 The Employer agrees to cooperate toward the prompt settlement of employee on-the-job injury claims when such claims are due and owing as required by law.

24.6 If an employee is required to take a driving test, then the Employer shall provide him/her with the given equipment to take said test.

## ARTICLE 25 - OWNER/DRIVERS

25.1 An Owner/Driver operating his/her own equipment or who is party to a good faith arm's length lease that makes Owner/Driver responsible for the equipment and where the Owner/Driver has the normal business risks associated with the ownership of such equipment shall not be considered an employee but an independent contractor-subcontractor under this Agreement.

25.1(a) Owner/Drivers and Signatories hereto shall maintain proper books and records for inspection by the Union to determine the Owner/Drivers compliance with the provisions of this Agreement, including the specific provisions of this Article. The books and records (including payroll records, timecards, etc.) shall be produced at the Local Union office upon reasonable notice.

25.1(b) Detailed statements will be furnished by Signatories hereto to such Owner/Drivers at least once a month, designating all such Owner/Drivers income and expenses for the month.

25.1(c) Each Signatory hereto shall provide a list to the Union during the first week of every month, indicating the names, addresses and Social Security Numbers of every Owner/Driver it has utilized in the previous month and shall also indicate whether the Owner/Driver is an employee or a subcontractor. Each such Signatory hereto will identify each and every such Owner/Driver to the Union regardless of whether or not the vehicle is licensed in the name of the driver or the lessee.

25.1(d) Owner/Drivers who meet the requirements of 25.1 above shall sign the Agreement marked Addendum A as attached to this Agreement. This will permit such Owner/Drivers to work on-site, as well as off-site, and avoid the need for the Signatories to this Agreement to have separate lists of Owner/Drivers for each type of work. In order to preserve and protect the work of employees under this Agreement, Owner/Drivers compensation shall be based on the billable hour rate utilized to compute employee compensation for the same work, but other compensation issues such as broker percentages, trailer rental rates, etc. shall be a matter of negotiation between Signatories hereto and Owner/Drivers and shall not involve the Union.

25.1(e) Such Owner/Drivers shall have complete freedom to purchase fuel, oil, grease, tires, tubes, etc., including repair work, at any place where efficient service and satisfactory products can be obtained at the most favorable prices.

25.1(f) The Signatories hereto shall not enter into any agreement or contract with Owner/Drivers, either individually or collectively, which in any way conflicts with any of the terms or provisions of this Article. Any such agreement shall be null and void.

25.2 Employers who subcontract to Owner/Drivers who elect to continue to stay in Teamsters Jointly-Trusted Benefit Funds shall follow their respective past practices with respect to the required contributions.

## ARTICLE 26 - NON-DISCRIMINATION

26.1 The Employer, its agents and supervisory employees, will not discriminate against, interfere with, restrain or coerce its employees because of membership in the Union or because of their duly authorized activities on behalf of the Union.

## ARTICLE 27 - EQUAL EMPLOYMENT OPPORTUNITY

27.1 In accordance with the requirements of applicable state and federal laws, there shall be no discrimination against any employee on the basis of race, color, religion, sex, age or national origin.

## ARTICLE 28 - EQUIPMENT

28.1 The Employer shall not require employees to take out on the streets or highways a vehicle which is not in safe operating condition or is not provided with the safety equipment prescribed by law. The Employer shall be responsible for providing such equipment.

28.2 The Employer shall install heaters and defrosters on all trucks. The Employer will keep heaters and defrosters and mechanical seats (if so equipped) in working condition.

28.3 All doors, windows and pop-out windows on trucks shall be maintained in working order.

28.4 All newly purchased trucks shall be equipped with air conditioning. The Employer shall keep all air conditioning units in new and existing trucks in proper working order.

## ARTICLE 29 - COMPLIANCE WITH SAFETY AND TRAFFIC LAWS

29.1 No employee shall be responsible for the purchase or display of City or State license tags or plates. An employee who is arrested or is issued a summons because of faulty equipment, shall not be required to surrender his/her chauffeur's license in lieu of bond and, if the employee is required to appear in court on behalf of the Employer, the employee shall be reimbursed for his/her lost time at their applicable rate of pay.

## ARTICLE 30 - JURY DUTY PAY

30.1 Regular employees required to perform jury service shall be paid the applicable rate of pay for their classification for time so spent provided they endorse their jury duty paycheck and turn it over to the Employer as proof they have served on a jury, and the said jury duty paycheck shall belong to the Employer. A regular Employee shall not be allowed more than two (2) weeks off with pay for jury duty, as described above, in any one year of the Agreement.

## ARTICLE 31 – MECHANIC'S TOOLS

31.1 If a Mechanic's tools are lost or stolen through fire or burglary on the Employer's premises or jobsite, the Employer shall replace the normally required tools at no cost to the Mechanic. The Mechanic shall be compensated in accordance with the inventory list that is on file with the Company prior to loss. The mechanic shall update the inventory list annually.

31.2 The Employer shall furnish for use by Mechanics, at no cost, the necessary sockets and impact tools over ½ inch drive, hand wrenches over 1 ¼ inches and necessary shop tools.

31.3 There must be at least two (2) employees on duty in the shop at all times during the night shift.

## ARTICLE 32 - BEREAVEMENT PAY

32.1 When an employee's spouse, child, mother, father, stepchild or step parent dies, said employee, if he/she so requests, shall be given the necessary time off with pay, not to exceed a total of three (3) days, ending with the day following the day of the funeral. In the event of the death of an employee's sister, brother, grandparent, grandchild, mother-in-law or father-in-law, said employee shall be given one (1) day off from work without loss of pay solely for the purpose of attending the funeral.

32.2 In the foregoing cases, the time off will be granted only to an employee who has completed the probationary period and who is actively at work or scheduled for work when the death occurs and the absence due thereto would result in loss of pay if this clause were not in effect. An employee who is laid off, on his/her day off, off sick, off on other personal business, on vacation or leave of absence shall not be eligible for the benefits in this Article. An employee may be granted upon request and verification of need for additional time for travel to attend a funeral of a member of the immediate family. Such additional time shall be without pay or benefits, and without loss of seniority.

A day 's pay for the purpose of this provision shall be at the applicable straight-time hourly rate of pay.

## ARTICLE 33 - ON THE JOB INJURY

33.1 An employee who is injured on the job and is sent home, or to a hospital, or who must obtain medical attention, shall receive the appropriate rate of pay, for the remainder of the day in which the injury occurred.

33.2 After sustaining an on the job injury, no employee shall be required to work until a full medical release without any type of medical restrictions has been procured. There shall be no obligation to offer light duty work.

## ARTICLE 34 – MANAGEMENT RIGHTS

34.1 The management of its employees, the control of the premises, and the direction of the work force are vested exclusively with the Employer and include but are not limited to the following: the direction of the work force which includes the right to hire, assign or promote employees; to discharge, suspend or otherwise discipline its employees for just cause; to require overtime; to determine, establish or modify staffing requirements. Such rights shall be exclusive to the Employer.

34.2 The parties further understand and agree that all inherent common law management functions and prerogatives, which the Employer has not waived in this Agreement, are retained and vested exclusively in the Employer.

## ARTICLE 35 - TECHNOLOGICAL CHANGE

35.1 Employer shall assign to the Teamsters any technological change, advancement, process, procedure, introduction of any new method, or machinery that replaces, modifies or eliminates work that has traditionally been performed by Teamsters.

## ARTICLE 36 - DRUG AND ALCOHOL TESTING/PHYSICAL EXAMINATIONS

36.1 *Drug and Alcohol Testing.* If an employee is required by his Employer to be tested for drugs or alcohol, the Employer shall pay the entire cost of the drug or alcohol testing procedure. The employee shall be tested immediately after the incident which gave rise to the need for such testing, and shall be made whole for any time lost and shall retain his seniority until such test results are made available. Drug and alcohol testing shall be paid by the Employer.

36.2 *Physical/D.O.T. Examinations.* If an employee is required by the Employer to take a physical or D.O.T. examination, the Employer shall pay the entire cost of such physical examination when the employee utilizes the Employer's designated physicians.

## ARTICLE 37 - BULLETIN BOARD ACCESS

37.1 The Employer shall provide space on an Employer bulletin board for use of the UNION for posting notices falling within the following categories:

        a)  Union meetings;
        b)  Union appointments;
        c)  Union elections;
        d)  Results of Union elections;
        e)  International Union correspondence and required postings.

Notices to be posted shall be signed by a Union Official. Any notices other than those specifically enumerated above shall be submitted to management for approval prior to posting. The bulletin board shall not be used by the Union or its members for disseminating proposals, political materials, inflammatory materials or materials derogatory to the Company.

## ARTICLE 38 - PRE-JOB CONFERENCE

38.1(a) Upon receiving written request from the Union and before commencing any job, an Employer shall meet with the Union upon request at a mutually agreed upon time and place for a pre-job conference for the purpose of advising the Union of the Employer's requirements as to the number of employees, the probable staring date, duration of the job, working schedules and other matters affecting employees. Upon receiving a written request, all contractors shall provide a list of subcontractors and owner/driver or drivers to the Local Union three (3) days prior to commencement of work.

38.1(b) Upon receiving written request from the Union, a Signatory hereto utilizing subcontractors must pre-job any and all work with the Local Union prior to starting said work covered by this Agreement.

38.2 When a project is within the territory of more than one Local Union, the determination of the division of Employees for representation purposes shall be made by an Agreement between the Local Union and the Employer, or Employers involved. In the event the Local Unions and the Employer, or the Employers, are unable to reach such an Agreement, the issue shall be referred within five (5) days to Teamsters Joint Council No. 25. Representatives of Teamsters Joint Council No. 25 shall meet with the Employer or Employers involved to settle this dispute and their joint decision shall be final and binding on all parties concerned. If a contractor evades a pre-job conference, it automatically forfeits its right to the grievance procedure. The Local Union may strike the project if a contractor fails to participate in said pre-job conference. This provision shall only apply when Signatory hereto has domiciled terminals in more than one Local Union affiliated with Joint Council 25.

## ARTICLE 39 - JURISDICTIONAL DISPUTES

39.1 All jurisdictional disputes between or among building and construction trades unions and Employers parties to this Agreement shall be settled and adjusted according to the present plan established by the Building and Construction Trades Department or any other plan or method of procedure that may be adopted in the future by the Building and Construction Trades Department. Decisions rendered shall be final, binding and conclusive on the Employer and Union parties to this Agreement.

## ARTICLE 40 - LABOR WORK

40.1 Chauffeurs are exempt from all labor work except when necessary to clean their truck body or to maintain the safety of their vehicles in the event of an emergency or breakdown. Chauffeurs shall operate one vehicle only, unless said vehicle is replaced with another. Chauffeurs shall maintain their trucks at the job site for loading until quitting time. Supply and service truck drivers shall load and unload their vehicles, except where doing so will infringe on the work of other trades or where the equipment or material to be loaded or unloaded is unreasonably heavy and assistance is needed, it will be supplied.

## ARTICLE 41 - EMPLOYMENT TERMINATION

41.1 *Discharge or Suspension.* The Employer shall not discharge or suspend any employee without just cause.

## ARTICLE 42 - SEPARATE AGREEMENTS

42.1 It is agreed that the Employer or the Employee and the Union will not make any written or verbal agreement, which may conflict with this Agreement.

## ARTICLE 43 - LABOR/MANAGEMENT COOPERATION COMMITTEE

43.1    There shall be a Labor/Management Cooperation Committee consisting of three (3) representatives appointed by the Joint Council to serve on behalf of labor and three (3) representatives appointed by the Association whose purpose shall be to work together to police this Agreement and organize those haulers who have not executed agreements covering the work specified within this Agreement.

## ARTICLE 44 - FEDERAL AND STATE REGULATIONS

44.1    Notwithstanding any other provision of this Agreement, the parties agree that the Employer, in its sole discretion, may take whatever action it deems appropriate to comply with the provisions of the Americans with Disabilities Act and to meet its obligations and exercise its rights under the Family Medical Leave Act.

## ARTICLE 45 - DURATION AND TERMINATION

45.1    This Agreement shall become effective on August 20, 2001 shall remain in force and effect until and including April 30, 2004.  Thereafter, this Agreement shall be renewed automatically for periods of one (1) year unless either party gives written notice to the other of the desire to modify, amend or terminate the Agreement at least sixty (60) days prior to April 30, 2004 or any subsequent expiration date.

IN WITNESS WHEREOF the parties have hereto set their hands this _15rd_ day of _MAY_ , _2002_ .

**FOR THE UNION:**                              **FOR THE EMPLOYER:**

_____          _____
SIGNATURE                                          SIGNATURE AND TITLE

_SECRETARY- TREASURER_                    _____
TITLE                                              COMPANY NAME

                                                   _____
                                                   ADDRESS

                                                   _____
                                                   CITY               STATE        ZIP

38

*FOR THE CHICAGOLAND DUMP*
*TRUCK HAULERS ASSOCIATION:*

MEMBERS OF NEGOTIATING
COMMITTEE:

BY: _____
SIGNATURE

BY: _____
SIGNATURE

BY: _____
SIGNATURE

BY: _____
SIGNATURE

BY: _____
SIGNATURE

BY: _____
SIGNATURE

BY: _____
SIGNATURE

BY: _____
SIGNATURE

*FOR THE UNIONS:*

*LOCAL 142*

BY: _____
RICHARD D. KENNEY

*LOCAL 179*

BY: _____
ROBERT WHITE, PRESIDENT

*LOCAL 301*

BY: _____
ROBERT BARNES

*LOCAL 325*

BY: _____
CLIFFORD CHENTNIK

*LOCAL 330*

BY: _____
JOSEPH N. DEGAND

*LOCAL 673*

BY: _____
THOMAS L. CUSTER

*LOCAL 705*

BY: _____
GERALD ZERO

*LOCAL 710*

BY: _____
FRANK J. WSOL

*LOCAL 731*

BY: _____
WILLIAM WOLDMAN

*LOCAL 786*

BY: _____
LOU MAZZEI

## *AGREEMENT OF ADOPTION*

## *FOR ASSOCIATION EMPLOYERS*

I HEREBY CERTIFY THAT AS A DULY AUTHORIZED REPRESENTATIVE OF THE UNDERSIGNED EMPLOYER THAT SUCH EMPLOYER, THROUGH ITS MEMBERSHIP IN THE CHICAGOLAND DUMP TRUCK HAULERS ASSOCIATION DOES ACCEPT AND AGREES TO COMPLY WITH AND BE BOUND BY ALL APPLICABLE PROVISIONS OF THE MAY 1, 2001 COLLECTIVE BARGAINING AGREEMENT BETWEEN THE CHICAGOLAND DUMP TRUCK HAULERS ASSOCIATION AND INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL UNION NO.'S 142, 179, 301, 325, 330, 673, 705, 710, 731 AND 786, ALL AFFILIATED WITH TEAMSTERS JOINT COUNCIL NO. 25. FURTHERMORE, SAID EMPLOYER AGREES TO THE CURRENT PROVISIONS AND DULY AUTHORIZED CHANGES THEREIN, WHICH MAY BE MADE BY EMPLOYER TRUSTEES AND UNION TRUSTEES RELATIVE TO THE APPLICABLE HEALTH AND WELFARE FUND AND PENSION/SEVERANCE FUND.

_____
SIGNATURE AND TITLE

_____
NAME OF EMPLOYER

_____
ADDRESS

_____
CITY            STATE        ZIP

_____
DATE

# ___ADDENDUM A___

## OWNER/DRIVER

## AGREEMENT

### with

## TEAMSTER LOCALS 142, 179, 301, 325, 330, 673, 705, 710, 731 AND 786

## ("the Union")

THIS AGREEMENT, made and entered into this _____ day of _____,
by and between the UNION and_____
(hereinafter referred to as "**Employer**").

1.  The Employer (Owner/Driver) hereby recognizes the Union as the sole and exclusive
    collective bargaining representative with respect to rates of pay, hours worked and all
    other conditions of employment for all current and future employees performing work
    as a Teamster.

2.  The parties acknowledge that this Agreement has been entered into voluntarily and
    shall involve Owners/Drivers. The Owner/Driver must either own the equipment
    operated or be a party to an arm's length lease that makes Owner/Driver responsible
    for the equipment and where Owner/Driver has the normal business risks associated
    with the ownership of such equipment.

3.  The Owner/Driver agrees that if an employee (someone other than the Owner/Driver)
    is utilized to drive the truck that the Collective Bargaining Agreement entered into
    between the Union and the Chicagoland Dump Truck Haulers Association shall apply
    to said employee and the terms of said Agreement are incorporated herein with the
    same force and effect as if herein set forth in full.

4.  The Owner/Driver agrees to maintain membership in a Local of the Union.

5.  The Owner/Driver shall make the necessary payments to maintain the status of a
    covered person under Chicagoland Dump Truck Haulers Association health and
    welfare plan. The terms and conditions of the contributions required shall be
    determined by the Carrier, but shall be equal to or greater than that of Teamsters
    Local 301's Medical Plan.

6. The Owner/Driver shall contribute a minimum of $40.00 per week to the Chicagoland Dump Truck Haulers Association sponsored 408(k) SEP Plan when any work is performed by the Owner/Driver under this Agreement during a specific week. Thereafter, the following schedule shall be maintained for each week where work is performed under this Agreement.

| EFFECTIVE | CONTRIBUTION RATE |
|---|---|
| May 1, 2002 until May 1, 2003 | $ 80.00 per week |
| May 1, 2003 until May 1, 2004 | $120.00 per week |

7. If the Owner/Driver is currently contributing to a jointly trusted Teamster retirement plan, insurance or pension, such Owner/Driver shall elect at the time of the signing of this Agreement as to whether said Owner/Driver wants to continue participation in those plans or to participate in the Association sponsored Health and Welfare and SEP Plans referred to above.

Those Owner/Drivers who elect to continue participation in any I.B.T. Health/Welfare and or Pension/Severance Fund shall be required to make contributions on their own behalf on the basis of work performed by said Owner/Driver to the respective funds.

8. The Owner/Driver agrees to maintain proper books and records and make said records available for inspection by the Union to determine whether or not the Owner/Driver is complying with the provisions of this Agreement.

9. THIS AGREEMENT shall remain in full force and effect through April 30, 2004 and shall continue thereafter unless there has been a sixty (60) days written notice by certified mail, by either party hereto of the desire to modify and amend this Agreement for negotiations. The Owner/Driver and the Union further agree that thereafter, absent notice, the Owner/Driver shall remain bound to the Collective Bargaining Agreement between the above-named Association and the Union as to any current and future employees and shall be bound by the terms of those Agreements for the extended life of the newly negotiated Collective Bargaining Agreement.

DATED THIS _____ DAY OF _____, _____.

2